IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SEAN GREENE and LEIAH GREENE,          )
                                       )
            Plaintiffs,                )    TC-MD 110687N
                                       )
      v.                               )
                                       )
BENTON COUNTY ASSESSOR,                )
                                       )
            Defendant.                 )    **DECISION**

Plaintiffs appeal the real market value of property identified as Account 416982 (subject property) for the 2009-10 and 2010-11 tax years. A trial was held in the Tax Courtroom on March 14, 2012. Plaintiff Sean Greene (Greene) appeared and testified on behalf of Plaintiffs. Caleb Nelson (Nelson), Sales Data Analyst and Registered Appraiser, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 12 were offered and received without objection. Defendant's Exhibits A through F and H were offered and received without objection.

## I. STATEMENT OF FACTS

The subject property is a 3,549 square foot home situated on a 0.20-acre lot located in Albany, Oregon. (Def's Ex A at 2.) The subject property improvement was built in 2003 by Sandstrum Homes and is a quality Class 5, or "good," property. (*Id.*; *see generally* Ptfs' Ex 12.) The subject property improvement includes five bedrooms, three and one-half bathrooms, a 640 square foot garage, and a deck. (Def's Ex A at 2, 5.) Nelson testified that it also includes a porch. (*Id.* at 5.) Greene disagreed and testified that the subject property includes a covered entry that is part of the "structure." Nelson testified that the subject property is located in a North Albany neighborhood with numerous other Sandstrum-built homes. Greene testified that Santstrum homes are all fairly similar. (*See generally* Ptfs' Ex 12.) Nelson testified that North

DECISION  TC-MD 110687N                                                          1

Albany is a "bedroom community" to Corvallis; many residents work in Corvallis for one of several large employers and live in North Albany.

A.      *Listing history and May 2009 sale of the subject property*

Greene testified that, in February 2008, the subject property was foreclosed and "transferred" to Fannie Mae for approximately $385,000. He testified that the subject property was initially listed for sale for $450,000 in March 2008. (*See* Def's Ex C at 11.) Greene testified that the subject property was listed with a reputable broker and marketed for a long period of time, 15 months, with listing price decreases over that time period. (*See id.* at 10 - 11.) The subject property was listed in the regional multiple listing service (RMLS) for $378,900 on December 17, 2008, and for $339,900 on March 31, 2009. (*Id.* at 10.) Greene testified that Plaintiffs purchased the subject property in May 2009 for $295,000. (Ptfs' Ex 1.) He testified that, although Plaintiffs' May 2009 purchase of the subject property was a bank sale, it was arm's-length and representative of the real market value of the subject property. Greene testified that he is not aware whether the bank received other offers, nor is he aware whether any of the other sales in the subject property neighborhood were bank sales.

Nelson testified that he does not agree that Plaintiffs' purchase of the subject property in May 2009 was arm's-length. He testified that the listing broker was located in Lebanon, which is located in Linn County about 17 miles from the subject property. (Ptfs' Ex 1; Def's Ex C at 14.) Nelson testified that, if he were to pick a realtor, he would pick someone in the same market, noting that a realtor needs to be available to meet with potential buyers and ensure that the property is adequately marketed. He testified that Lebanon is not the same market as Albany; average prices are lower in Linn County than in Benton County. (Def's Ex B at 4.)

/ / /

B.      *Plaintiffs' additional market evidence*

Greene is the owner of the subject property. Additionally, he testified that, although he is not a licensed broker or appraiser, he owns 11 properties and is experienced in real estate. As support that the subject property sale is representative of its real market value, Greene provided an article by Alan Smith (Smith), Deputy Assessor, Ada County Assessor's Office, Boise, Idaho, entitled "Distressed Sales: Anomaly or Market Value?" Smith states that "bank-owned resales, if they are marketed by a realtor, or through a multiple listing service for a time period considered to be an average exposure to the market, will likely be very close to fair market value in this type of market." (Ptfs' Ex 10 at 3.) Nelson questioned the relevance of the article for the subject property market because the study was based on the Boise market.

Greene also provided a list of properties in the subject property neighborhood identifying the size in square feet of each property, the sales price, and the year of sale. (Ptfs' Ex 3 at 1.) The properties identified range in size from 3,470 to 3,976 square feet. (*Id.*) According to Greene's list, of the four properties sold in 2008, three sold for $425,000 each and one sold at $452,000.[1] (*Id.*) Two properties sold in 2009: the subject property at $295,000 and another property at $414,000. (*Id.*) Five properties sold in 2010 for prices ranging from $335,000 to $380,000. (*Id.*) Plaintiffs' purchase of the subject property for $295,000 is the lowest sale price identified on Greene's list for any of the years, 2003 through 2011. (*Id.*)

Greene testified that he believes the subject property is one of several "toxic" properties in its neighborhood that suffer from excessive assessed values.[2] (*See* Ptfs' Ex 4 at 1.) He testified that the assessed value of the subject property is higher than other properties and

---

[1] A fifth sale is identified in 2008 for $358,319; that appears to be the "transfer" of the subject property to Fannie Mae. (Ptfs' Ex 3-1.)

[2] The properties identified by Greene as "toxic" are, with one exception, all located on the same street as the subject property, Broadway Street NW. (Ptfs' Ex 4-1.)

constitutes an "encumbrance," which has the effect of reducing the real market value that a buyer would pay for the property. Greene testified that he believes the assessed value of the subject property, along with other properties located in Benton County, reflects an error stemming from a computer system malfunction that occurred in 2002. (*See* Ptfs' Ex 8 at 2, article describing the "computer problem".) He testified that, between 2003 and 2010, the assessed value of several properties in the subject property neighborhood were reduced by 4 to 13 percent in one year and the assessed value of numerous properties in the subject property neighborhood were increased by 10 percent in one year. (*See* Ptfs' Ex 4 at 1.) Greene hypothesized that those changes resulted from Defendant's correction of previous errors in the assessment rolls.

C.     *Defendant's appraisal*

Nelson testified that, based on his comparable sales, he determined a 2009-10 real market value of $405,000 and a 2010-11 real market value of $395,000 for the subject property. (Def's Ex A at 5 - 6.) He testified that he identified six comparable sales in the subject property neighborhood; three were from 2008 and three from 2009. (*Id.*) Nelson testified that he used a paired sales analysis to determine adjustments for lot size and improvements size. (Def's Ex B at 1.) He testified that he relied on Marshall and Swift for other adjustments. (*Id.* at 2.) Nelson testified that his time adjustments were based on sales statistics from the RMLS. (*Id.* at 4.)

Nelson's 2008 sales occurred in October, September, and May, with unadjusted prices of $425,000, $425,000, and $452,000, respectively. (Def's Ex A at 5.) He determined adjusted prices of $403,255, $407,985, and $409,366 for the 2008 sales. (*Id.*) Nelson's 2009 sales occurred in December, August, and November, with unadjusted prices of $414,000, $335,000, and $346,000, respectively. (Def's Ex A at 6.) He determined adjusted prices of $400,245, $381,256, and $404,355 for the 2009 sales. (*Id.*) Greene questioned how the 2009-10 real

market value of the subject property could have been $405,000 when it was listed for less than that amount on January 1, 2009, and did not sell. Nelson responded that he did not know, but speculated that it might be because the subject property was listed with an "out of town" realtor. Greene questioned the comparability of Nelson's comparable sales, noting that sale 3 has a "commercial kitchen" and "backs up to a greenway."

Nelson testified that he determined a 2009-10 real market value of $451,229 for the subject property under the cost approach. (Def's Ex A at 5, 11.) He testified that he did not determine a 2010-11 real market value of the subject property under the cost approach because the cost of materials did not decrease to the same extent as market values of existing properties. Nelson determined that, for the 2010-11 tax year, "[e]xisting homes can be purchased for less than the cost of construction." (*Id.* at 6.)

The 2009-10 real market value set by the board of property tax appeals (board) for the subject property was $378,900. (Def's Ltr, July 13, 2011.) The 2010-11 roll real market value of the subject property, sustained by the board, was $334,664. (Ptfs' Compl at 2.) Plaintiffs previously requested a 2009-10 real market value of $288,332. (*See* Order, Oct 17, 2011, at 31.) However, Greene did not distinguish between the two tax years at trial and stated Plaintiffs' requested real market value as $295,000, based on the May 2009 purchase price.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2009-10 and 2010-11 tax years. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*

/ / /

/ / /

(*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted)).

Real market value is defined in ORS 308.205(3),[3] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2009-10 tax year was January 1, 2009, and the assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

Defendant relied on the sales comparison approach.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

OAR 150-308.205-(A)(2)(c). "The court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, WL 21263620 at *3.

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

---

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009. The 2007 ORS are applicable for the 2009-10 tax year, but do not differ materially from the 2009 ORS and OAR provisions cited in this Decision.

"[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiffs did not offer evidence under any of the three approaches of value, relying instead on the May 2009 sale of the subject property. The lack of an appraisal is not fatal because "[t]he various approaches to valuation * * * are only vehicles used to determine the ultimate fact -- market value." *Kem v. Dept. of Rev.* (*Kem*)*,* 267 Or 111, 114, 514 P2d 1335 (1973). "A recent sale of the property in question is important in determining its market value." *Id*. "If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value." *Id*.

Nelson disagrees that the May 2009 sale of the subject property is reliable evidence of market value, arguing that it was not an "arm's-length" transaction and was not sufficiently exposed to the market based on what Nelson believes was inadequate marketing by an "out-of-town" realtor. Nelson cited two previous decisions of this court: *Matzke v. Multnomah County Assessor* (*Matzke*), TC-MD No 100265B (Dec 20, 2010), and *Mary Kent Living Trust v. Benton County Assessor* (*Kent*), TC-MD No 110729D (Dec 15, 2011). (*See* Def's Exs D, E.) Nelson testified that *Kent* involved a property owned by Plaintiffs' neighbor. He testified that Plaintiffs' neighbor sought a reduction in the 2010-11 real market value of her property based on the May 2009, sale of the subject property for $295,000. *Kent*, TC-MD 110729D at 2. Greene testified that *Matzke* is distinguishable because the property at issue in that case initially sold in January

///

2008 for approximately $485,000 and resold in September 2008 for approximately $317,000; thus, the maximum marketing time was only eight months.

"This court has been reluctant to consider 'foreclosure' sales as 'arm's-length transactions' because such sales 'may well involve an element of compulsion on the part of the seller.' " *Voronaeff v. Crook County Assessor*, TC-MD No 110361C at 7 (Apr 25, 2012) (citations omitted). "There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value." *Kryl v. Lane County Assessor*, TC-MD No 100192B at 4 (Mar 30, 2011). However, property purchased through foreclosure may be "a voluntary *bona fide* arm's-length transaction between a knowledgeable and willing buyer and a willing seller." *Ward v. Dept. of Revenue*, 293 Or 506, 508, 650 P2d 923 (1982). "There are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk v. Lane County Assessor* (*Brashnyk*), TC-MD No 110308 at 8, WL 6182028 *5 (Dec 12, 2011). "[W]here the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.* (*Morrow*), 10 OTR 146, 148 (1985).

Plaintiffs have not presented any evidence that foreclosures and short sales characterize the market for the subject property. Plaintiffs provided a list of sales that occurred between 2003 and 2011 in the subject property neighborhood; unadjusted sale prices in 2008, 2009, and 2010, ranged from $335,000 to $452,000. It is not clear which, if any, of those sales were foreclosures or short sales. Plaintiffs' purchase of the subject property for $295,000 in May 2009 is the lowest sale price identified for any of the years, 2003 through 2011. "Usually, one sale does not make a market." *Truitt Brothers, Inc. v. Dept. of Rev.,* 302 Or 603, 609, 732 P2d 497 (1987).

Both parties opined as to why the subject property sold for less than other properties in its neighborhood. Greene suggested that the subject property is a "toxic property" with a significant property tax burden that constitutes an "encumbrance" on the subject property. Nelson attributes the low sale price to poor marketing efforts by an "out of town" realtor. Neither party presented persuasive evidence in support of its theory. The court finds that the sale of the subject property in May 2009 for $295,000 was not an "accurate reflection of the market" based on the other sales in the subject property neighborhood and Nelson's comparable sales. *Morrow*, 10 OTR at 148.

This court has observed that "bona fide listings establish the upper limit on the market value of the listed property." *Martin v. Dept. of Rev.*, 8 OTR 141, 147 (1979). In *Brashnyk*, the property at issue, "a bank-owned property," was listed "for almost five years" before the sale in July 2010. TC-MD No 110308 at 8, 10. In this case, the subject property was exposed to the market for 15 months before Plaintiffs' purchase in May 2009. It was listed in the RMLS for $378,900 as of December 17, 2008, and for $339,900 as of March 31, 2009. Nelson argued that the subject property was not adequately marketed because the listing broker was "out of town" in Lebanon, Oregon. The court is not persuaded that the marketing of the subject property was inadequate based solely on the fact that the listing broker was located in Lebanon rather than Albany. In fact, neither party was knowledgeable about the listing broker's marketing efforts and the listing broker did not testify. The subject property's 2009-10 real market value of $378,900 set by the board and the 2010-11 roll real market value of $334,664 are supported by the listing history of the subject property and market evidence presented by the parties. The court finds that there is no support for a change in real market value for either tax year.

/ / /

/ / /

### III. CONCLUSION

After carefully considering the testimony and evidence presented by the parties, the court finds that the 2009-10 and 2010-11 real market values the subject property are supported by the listing history of the subject property and the market evidence presented by the parties. There is no support for a change in real market value for either tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of July 2012.


_____
ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*


*This document was signed by Magistrate Allison R. Boomer on July 10, 2012. The Court filed and entered this document on July 10, 2012.*