IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HOTCHKISS FAMILY TRUST,      )
                             )
              Plaintiff,     )      TC-MD 120097D
                             )
       v.                    )
                             )
LINN COUNTY ASSESSOR,        )
                             )
              Defendant.     )      **DECISION**

Plaintiff appeals the real market value of residential property identified as Account

195913 (subject property) for the 2011-2012 tax year. A trial was held in the Oregon Tax Court,

Salem, Oregon on June 27, 2012. Plaintiff's trustee, Burton Hotchkiss (Hotchkiss) testified on

its behalf. Matt Pitcher (Pitcher), registered appraiser, testified on behalf of Defendant.

Plaintiff's Exhibits A through E, and Defendant's Exhibits A through D were received

without objection.

## I. STATEMENT OF FACTS

The subject property is a 7,020 square foot lot in Lebanon, Oregon. (Def's Ex A at 1.)

The subject property's improvement is a single family house with 1,028 square feet of living

space. (*Id.*) The house has two bedrooms, and one bath, with an attached single car garage.

(Ptf's Ex C; Def's Ex C at 7.) Hotchkiss testified that, at the time of his purchase, the subject

property had substantial deferred maintenance. (*See* Def's Ex A at 3.) He testified that the

subject property is now in fair condition after he has completed substantial repairs.

/ / /

/ / /

/ / /

Hotchkiss testified that he purchased the subject property from Federal National Mortgage Association on November 24, 2010, paying $38,000. (Ptf's Ex A.) Pitcher testified that the subject property was bank-owned at the time Hotchkiss made his purchase. (Def's Ex C at 7.) Hotchkiss testified that he placed the subject property on the market on November 4, 2011, at a listing price of $59,000. (Ptf's Ex C.) He testified the he received one offer of $43,000 after three and a half months on the market. Hotchkiss testified that the Linn County Board of Property Tax Appeals (BOPTA) reduced the subject property's real market value to $49,730 on February 17, 2011. (Ptf's Ex D.) He testified that, after receiving the BOPTA Order, he reduced the listing price in February 2011 to $49,000. Hotchkiss testified that the subject property is still listed for $49,000 but he has not received any offers and agents are no longer showing it. Plaintiff requests the court to reduce the subject property's real market value to its purchase price of $38,000.

Pitcher appraised the subject property using the comparable sales approach and determined a real market value for the subject property of $49,730. (Def's Ex A at 3.) Defendant requests the tax roll real market value of $49,730 be sustained. Pitcher testified that he relied on four comparable properties. (Def's Ex C.) He testified that he adjusted the comparable properties for time, using data taken from "county wide" multiple listing services. (Def's Ex C at 1.) He testified that he adjusted the four comparable properties' improvements using the Oregon Department of Revenue residential cost factors. (*Id.*) Pitcher testified that the real market values for properties in the county were declining at an annual rate of 10 percent in 2010.

/ / /

/ / /

## II. ANALYSIS

The issue before the court is the subject property's real market value as of January 1, 2011. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[1]

ORS 308.205(1) defines real market value as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

### A. *Purchase Price*

When determining real market value, a "recent, voluntary, arm's-length" sale of a property between a willing and knowledgeable buyer and seller, "while certainly not conclusive, is very persuasive of real market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973); see also *Sabin v. Dept. of Rev.*, 270 Or 422, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974).

Plaintiff's November 24, 2010, purchase was close to the January 1, 2011, assessment date. That was a fairly recent sale.

The next question is whether the sale was an "arm's length" transaction. At the time of Plaintiff's purchase, the subject property was a bank-owned property. (Def's Ex C at 7.) This court has addressed the issue of bank-owned property previously, observing that:

> "A property purchased through foreclosure may well involve an element of compulsion on the part of the seller. There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer

---

[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011.

willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor* (*Kryl*), TC-MD No 100192B, WL 1197444 *2 (March 30, 2011).

In *Kryl*, little weight was given to a bank-owned property sale when the bank sold the property a few months after acquiring it and with a short listing period. This court has also noted that, "a sale of bank-owned property conducted with such rapidity suggests duress or compulsion on the part of the seller, leading the court to conclude such sales as not indicative of an arm's-length transaction." *Brashnyk v. Lane County Assessor* (*Brashnyk*), TC-MD No 110308, WL 6182028 *5 (Dec 12, 2011).

The Department of Revenue has adopted an administrative rule that specifies that "[w]hen nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c).

The Oregon Supreme Court, in *Ward v. Dept. of Revenue*, recognized that property purchased through foreclosure may be considered "a voluntary bona fide arm's-length transaction between a knowledgeable and willing buyer and a willing seller." 293 Or 506, 508, 650 P2d 923 (1982). This court has also held that "[t]here are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk*, TC-MD No 110308, WL 6182028 *5. "[W]here the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985). Bank-owned property sales may be considered as comparable sales for the purpose of establishing real market value, "when those bank-owned property sales have been exposed to the

open market and meet the 'nominal standards for an acceptable comparable sale.' " *Brashnyk*, TC-MD No 110308, WL 6182028 *6.

Hotchkiss testified that the subject property was exposed to the market for 82 days. He testified that the sale of the subject property was an arm's length transaction because, "he did not know the seller." The Appraisal Institute explains that the term "arm's-length" involves "[a] transaction between unrelated parties under no duress." Appraisal Institute, *The Appraisal of Real Estate* 305 (13th ed. 2008). This court has been reluctant to consider "foreclosure" sales as "arm's-length transactions" because such sales "may well involve an element of compulsion on the part of the seller." *Kryl*, TC-MD No 100192B, WL 1197444 *2 (Mar 30, 2011).

The subject property was a bank-owned property that Hotchkiss purchased within in 82 days of its listing date. Without any other evidence to overcome the implication of duress or compulsion on the part of the seller, the court concludes that Plaintiff's purchase of the subject property was not indicative of an arm's-length transaction. Plaintiff's purchase price of $38,000 is not singularly persuasive evidence in establishing the subject property's real market value.

B. *Comparative sales approach*

Real market value is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation -- income, cost, and sales comparison -- that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); see also OAR 150-308.205-(A)(2)(a). The valuation approach to be used is a question of fact to be determined on the record. *Pacific Power and Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

/ / /

Pitcher's appraisal report presented a modified comparable sales approach. Plaintiff relied on its purchase price which occurred close to the assessment date. Neither party considered the cost approach or the income approach.

In a case such as this one before the court, the comparables sales approach may be used to value improved properties. *Chambers Management Corp and McKenzie River Motors v. Lane County Assessor*, TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)). The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that, "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

As the party seeking affirmative relief, Plaintiff bears the burden of proving that his subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes, "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, / / /

real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (March 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

In the case before the court, Plaintiff did not present a comparable sales approach. Even though Plaintiff's purchase of the property was recent, Hotchkiss failed to provide any evidence other than his purchase price in support of the subject property's real market value as of the date of sale. Plaintiff did not present any competent evidence of the subject property's real market value as of the date of assessment, such as an appraisal report or testimony of an appraiser or other competent expert. Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed*, 310 Or at 265. Plaintiff has failed to carry its burden of proof.

"Even though Plaintiff failed to carry its burden of proof and the 'burden of going forward with the evidence' has not shifted, the court has jurisdiction to determine the 'real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties.' " *Kryl*, WL 1197444 at *4; ORS 305.427; ORS 305.412.

Pitcher submitted an adjusted comparable sales analysis for the subject property, supporting a roll value of $49,730. "In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key component in evaluating properties. According to The Appraisal of Real Estate:

> 'Ideally, if all comparable properties are identical to the subject property, no
> adjustments will be required. However, this is rarely the case * * *. After
> researching and verifying transactional data and selecting the appropriate unit of
> comparison, the appraiser adjusts for any differences.'

Appraisal Institute, *The Appraisal of Real Estate* 307 (13th ed. 2008.)" *Voronaeff v. Crook County Assessor*, TC-MD No 110361C at 6 (Apr 25, 2012). Even though Pitcher made some adjustments to the comparable properties for improvements that were adequately explained or supported, his adjustments for time, condition, and lot size were not adequately explained or supported. (Def's Ex C at 1.) Pitcher's adjustments for time were based on county wide data and were not specific to the subject property's neighborhood. Pitcher based his adjustments for lot size on a conservative estimate citing a lack of adequate market data. (*Id*.) Pitcher did not provide documented support for his adjustments for condition.

The court finds that, with support for only a portion of the adjustments to his selected comparable properties, Pitcher's evidence in support of his determined real market value is inconclusive. However, Defendant does not have the burden of proof.

Even though Plaintiff failed to carry his burden of proof and Defendant's evidence is inconclusive, the court will consider the market in an effort to determine the subject property's real market value.

In the case before the court, the subject property was bank-owned prior to Plaintiff's purchase on November 24, 1010. The short time that the subject property was listed prior to the sale was not persuasive enough to overcome the suggestion that the rapid sale of the bank-owned property implied duress or compulsion on the part of the seller and leads the court to conclude that such market activity is not indicative of an arm's-length transaction. Plaintiff listed the subject property for sale at $49,000 and maintained that listing price, while claiming that the actual real market value for the property is $39,000. Offering the property for sale at a price higher than the requested real market value is directly contradictory to Plaintiff's requested real

market value and does not support Plaintiff's claim that the subject property's real market value was less as of the assessment date.

## III.  CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof.  The court accepts Defendant's determination of the subject property's real market value.  Now, therefore,

IT IS THE DECISION OF THIS COURT that the tax year 2011-12 real market value of property identified as Account 195913 is $49,730.

Dated this ____ day of  August 2012.

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on August 6, 2012 .  The Court filed and entered this document on August 6, 2012.*