# IN THE OREGON TAX COURT

## MORROW COUNTY GRAIN GROWERS
*v.*
## DEPARTMENT OF REVENUE
(TC 2013)

William J. Kuhn, Kuhn & Spicer, Heppner, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, represented defendant.

Decision for plaintiff rendered October 21, 1985.

**H. WILLIAM BARLOW, Judge Pro Tempore.**

Plaintiff appeals to this court from defendant's Order No. VL 83-652 issued June 10, 1983. By that order, the defendant Department of Revenue sustained the findings of the Morrow County Board of Equalization as to the value of certain real properties.

Plaintiff is an agricultural cooperative located in Morrow County. It owns six grain elevators which are the subject of this proceeding. Two of the elevators are located on the same tax lot so are considered as one. They are located in four different communities in Morrow County.

Grain elevators are broadly classified as "country" or "terminal." The former receive their grain direct from farmers and then reship to other elevators or to a user. The latter receive from country elevators or other terminals and ship to users or exporters. Country elevators tend to be lighter in

construction because their volume is low. (*See* Patchin, *Grain Elevators: Three Approaches to Value,* The Appraisal Journal 393 (July 1983).

Each of the parties has utilized some variation of the three classical appraisal methods in arriving at a value although the Department of Revenue has rejected the income approach. It is its position that that method contains too many variables to be reliable. The end result is a wide variance between the values assigned by the respective parties.

In its use of the cost approach, plaintiff's appraiser developed a value based upon replacement cost. He used two techniques — estimated cost of replacement from a construction firm and estimated costs from a valuation handbook. The defendant produced values based upon replacement cost new and reproduction cost new. The replacement cost method involves a determination of the cost of building a unit that is similar in utility to the existing unit but using contemporary design. The reproduction cost method results in an estimate based upon the cost of building a replica of the subject property. In both instances, a depreciation factor is then applied to arrive at the current value.

Both parties used the market method. Plaintiff had several purportedly comparable sales which were adjusted by various methods to arrive at a market value. Included as comparables in plaintiff's data were several sales characterized by defendant as "distress sales." They were sales of property in bankruptcy. Defendant used the same technique but declined to use the bankruptcy sales, claiming they were unreliable.

The income technique was used by the plaintiff but was rejected by defendant. Defendant took the position that the income from the elevators could not be segregated from other sources of income or from other factors affecting income and this made the method unreliable. To arrive at an income figure, plaintiff used data based upon a landlord-tenant relationship and also on an owner-operator business.

Plaintiff contends that economic conditions have had an adverse effect on the value of the elevators. Their witnesses state that there is a tendency on the part of the local growers to construct their own on-farm storage. They also testified that the market has been down, particularly in the year of the

appraisal. The defendant's appraiser testified that he was advised that the elevators had been full and that they were adequately serving the communities in which they were located so he eliminated these market conditions as a factor.

Another point of contention between the parties was the method of arriving at cost figures. The plaintiff utilized cost figures for a metal facility when appraising the concrete structures. The rationale for this is that the concrete structures were overbuilt considering their location and usage. They argue that contemporary standards would dictate the construction of a metal facility if the existing concrete structures were to be replaced. Metal construction is less costly than concrete which would result in a lowered value.

The following table describes the properties by their location and type of construction and gives the value assigned by the respective parties:

| Location | Type | Plaintiff | Defendant |
|----------|------|-----------|-----------|
| Heppner | Metal | $ 75,000 | $182,300 |
| Ruggs | Concrete | 200,000 | 432,000 |
| North Lexington | Metal | 330,000 | 504,000 |
| Lexington | Concrete | 325,000 | 482,300 |
| Ione | Metal | 180,000 | 340,000 |

The testimony of the plaintiff's witnesses was that the market during this appraisal period was depressed. This seems to be confirmed by the market studies made by both parties. Of the nine comparable sales produced by the Department of Revenue, six were "distress" sales and for that reason were not used. That left one usable comparable sale for the concrete structure and two for the wood crib structure. The plaintiff had thirteen sales, most of which were bankruptcy or distress sales, and utilized them all in its computations.

■ It is probably right, as contended by defendant, that an isolated distress sale is not reliable. In this case however, where the majority of the sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market.

None of defendant's data seems to reflect economic conditions. By eliminating those comparable sales that it characterizes as distress sales, this factor was excluded. The

cost method does not incorporate that element and the income technique, which would, was not used by the department.

Plaintiff's evidence has convinced the court that economics and market factors in the industry have had a significant influence on the values of the subject properties. The defendant's evidence does not address this problem. Plaintiff's evidence is credible and reliable. The literature indicates that the income approach can be effectively used in this type of case.

The value estimates of plaintiff are adopted by the court. Opinion and Order No. VL 83-652 of the Department of Revenue is hereby set aside and held for naught. Plaintiff will prepare an appropriate judgment order. Costs to plaintiff.