IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ROBERT D. HAMMOND,                        )
                                          )
            Plaintiff,                    )    TC-MD 120290N
                                          )
      v.                                  )
                                          )
DESCHUTES COUNTY ASSESSOR,                )
                                          )
            Defendant.                    )    **DECISION**

Plaintiff appeals the real market value of property identified as Account 251309 (subject property) for the 2011-12 tax year. A telephone trial was held September 27, 2012. Plaintiff appeared and testified on his own behalf. Eric Sexton (Sexton), Registered Appraiser, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1, 2, 3, and 4 and Defendant's Exhibits A, B, C, D, and E were received without objection.

## I. STATEMENT OF FACTS

Sexton testified that the subject property is a two and one half-acre lot located in a desirable location, the Deschutes River Ranch (the Ranch), in Tumalo, Oregon, about 15 minutes by car from Bend, Oregon. (*See* Def's Ex A at 1.) He testified that the Ranch is a "luxury subdivision" located in a "working ranch." (*Id.*) Sexton testified that the Ranch includes 36 home sites, 12 of which are between 2.17 and 5.00 acres. (*Id.*) He testified that the Ranch offers access to the Deschutes River, fishing, hiking, and horse-back riding. (*Id.*) The subject property "is approved for septic, has utilities to the site including Bend Broadband (local phone/TV/internet provider), has paved access, and has no irrigation water rights." (*Id.*) Sexton provided photographs demonstrating spectacular river, mountain, and pasture views from the subject property. (*Id.* at 3-6.)

The subject property was sold in August 2005 for $989,000 and again in April 2007 for $1,275,000. (Def's Ex A at 7.) The April 2007 purchaser of the subject property "let [the subject property] go to a court house steps auction in October 2010 and was sold to Harrison Street Property Group LLC in the amount of $216,001." (*Id.*) Plaintiff, who worked for Harrison Street Property Group LLC at that time, purchased the subject property for "other consideration" in October 2010. (*Id.*; *see also* Def's Ex D at 4.) Plaintiff reported that his purchase price was $216,001. (Ptf's Ex 1 at 2.)

Plaintiff testified that the county board of property tax appeals (board) reduced the real market value of the subject property to $240,000 for the 2010-11 tax year. He testified that he looked at property value trends from 2010 through 2011 and determined a 12 percent decline for land, suggesting a 2011-12 real market value of $211,000. (Ptf's Ex 2.) Plaintiff testified that he reviewed all sales of land ranging from one to five acres in size from "Sisters, Bend/Tumalo/Alfalfa" from July 1, 2010, through June 30, 2011. (Ptf's Ex 3.) Plaintiff's search yielded 35 sales, ranging in price from $32,500 to $360,000 with an average sale price of $137,992 and a median price of $110,000. (*Id.* at 1-2.)

Plaintiff testified regarding the four properties on his list that sold for the highest prices. (*Id.*) He testified that the two sales on "NW Wild Rye Circle" are not comparable to the subject property because of their location in Bend; those properties sold for $304,000 and $330,000. (*Id.* at 1.) The property located at 69960 Camp Polk Road in Sisters, Oregon, sold for $360,000. (*Id.* at 1, 3.) That property is 3.230 acres and described as: "Beautiful creek side setting on Whychus Creek * * * surrounded by mature trees and abutting Aspen Lakes common ground. Creek frontage to delight you!!" (*Id.* at 3.) Sexton testified that he considers that sale to be a good

comparable for the subject property. (*See* Def's Ex E at 2.) He noted that the lot lacks electricity and paved access, but is otherwise comparable. (*Id.*)

The property located at 16825 Delicious in Bend is 5.00 acres and sold for $300,000. (Ptf's Ex 3 at 1, 4.) The property is described as a "[b]eautiful secluded parcel with full mountain views. Pine & Juniper. Bordered by Forest Service on one side. Gently rolling terrain. Dead end road for privacy. Lots of wildlife. No manufactured homes." (*Id.* at 4.) Although he did not use that sale in his sales comparison approach, Sexton considered it to be comparable to the subject property and supportive of the 2011-12 roll real market value. (Def's Ex E at 3.) Sexton noted that, unlike the subject property, the lot at 16825 Delicious "did not have approved septic feasibility" and lacked the amenities of the Ranch. (*Id.*)

Plaintiff testified that there were three sales within the Ranch that occurred close to the assessment date. (Ptf's Ex 4 at 1.) A 2.50-acre property located at 20450 Arrowhead Drive sold for $500,000 in January 2011. (*Id.*) Plaintiff testified, and Sexton agreed, that the property is located very close to the subject property and is virtually identical to the subject property, except that it included a five-bedroom house. (*Id.*; *see* Def's Ex E at 3.) Sexton testified that the house was only about 50 percent complete at the time of sale and had been "exposed to the elements for three years." (Def's Ex E at 3.) Plaintiff disagreed, estimating the house was 80 percent complete at the time of sale. He testified that the buyers spent about $500,000 after purchase to complete the house. Plaintiff testified that the property was sold by Bank of America following foreclosure. He testified that there were no bidders at the public auction and the property was given to a realtor who marketed it for a long time before it finally sold. (Ptf's Ex 4 at 1.)

Plaintiff testified that 20240 Rock Canyon is a beautiful four-bedroom house situated on 5.43 acres; it sold for $899,000 in May 2011. (*Id.*) Sexton testified that the 20240 Rock Canyon

sale was not arm's-length; it was a short sale. (Def's Ex E at 3.) He testified that the buyers paid off liens totaling $200,000 as part of the sale. (*See id.*) Plaintiff disagreed that the buyers of 20240 Rock Canyon property paid off liens as part of their purchase. He testified that there are no public records of any liens on that property other than a $6,500 homeowner's association lien that was paid off before the sale. Sexton testified that he was told by a realtor involved in the sale that the 20240 Rock Canyon sale included lien payoffs. (*Id.*)

Plaintiff testified that 20361 Rock Canyon Road was the only land sale in the subdivision during the year prior to January 1, 2011. (Ptf's Ex 4 at 2.) Plaintiff testified that the lot is 0.61 acres and sold in a short sale on May 23, 2011, for $150,000. (*Id.*) Sexton used the 20361 Rock Canyon Road sale as a comparable sale, but considers it to be "the most inferior lot within the [R]anch. It is a small lot, just over a half acre in size, has no river view, no pasture view, and minimal mountain views." (Def's Exs E at 3, B at 7-8.)

Sexton stated that, "[d]ue to the uniqueness of [the Ranch], sales within the [R]anch are the most comparable and appropriate to use when appraising a property within the [R]anch." (Def's Ex B at 1.) Sexton testified that he completed "two studies" related to properties in the Ranch, as well as a sales comparison approach (the "third study"). (*See id.*) Sexton's "first study * * * was that of historic sales outside of [the Ranch] compared to sales within [the Ranch]." (*Id.*) He narrowed his study to properties between 0.01 and 6.00 acres, "zoned Exclusive Farm Use (EFU) or Multiple Use Agriculture (MUA), * * * centrally located around the subject, and sold in 2005 through 2008, and 2011." (*Id.*) Sexton excluded sales that involved "foreclosures, duress, short sales, sold by a bank or mortgage company, interrelated corporations or persons." (*Id.*) As a result, Sexton's study did not include any bare land sales from 2009 and 2010. (*Id.*) Sexton found that sales in the Ranch sold for 207 to 548 percent

more than sales outside of the Ranch. (Def's Ex B at 1-4.) For 2011, he identified two sales in the Ranch and two sales outside of the Ranch, indicating a 270 percent price difference. (*Id.* at 4.)

Sexton's "second study * * * was that of historic sales within [the Ranch] in comparison to each other." (*Id.* at 5.) "The purpose of the study was to determine if a discrepancy existed between the sale of the small and large sites within the ranch." (*Id.*) The parameters of the study were bare land sales within [the Ranch] that were actual market transactions, and sold in 2005 through 2007. There [were] no sales of small and large sites occurring with[in] the same year since 2007." (*Id.*) Sexton testified that he found that large sites within the Ranch sold for "2.28 to 4.25 times more than the small sites" within the Ranch. (*Id.* at 5-6.) Plaintiff criticized Sexton's refusal to consider "distressed" sales, noting that, when all "distressed" sales were excluded, there were very few actual "transactions" in the county close to the assessment date.

Sexton's "third study * * * was an appraisal of the subject property by doing a direct comparison of two sales within [the Ranch] to the subject property. The two comparable sales were actual market transactions." (*Id.* at 7.) The two sales identified by Sexton were both "small" lots, 0.42 and 0.61 acres, which sold for $190,000 on November 22, 2011, and for $150,000 on May 19, 2011, respectively. (*Id.* at 8.) As discussed above, Sexton's considers the 0.61-acre lot "the most inferior lot within [the Ranch]." (*Id.*) He described the 0.42-acre lot as "adjacent to the meadow with excellent mountain views." (*Id.*) Like the subject property, both lots had "paved access, CUP approval, a well, septic feasibility approval, and utilities to site including Bend Broadband." (*Id.*)

The 2011-12 roll real market value of the subject property was $310,000. (Ptf's Compl at 2.) The 2011-12 maximum assessed value of the subject property was $501,970. (*Id.*) Plaintiff

requests a 2011-12 real market value of $211,000. Defendant requests that the 2011-12 tax year real market value of $310,000 be sustained.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citation omitted). Real market value is defined in ORS 308.205(1),[1] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has

---

[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff relies, in part, on his $216,001 purchase of the subject property in October 2010.

"A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's-length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value."

*Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973). Plaintiff's purchase in October 2010, was "recent" as of January 1, 2011. The question becomes whether the sale was a "voluntary, arm's length transaction."

The subject property was purchased in October 2010 through an auction.[2] "This court has made a distinction between the sale of bank owned properties using a multiple listing service and an auction." *Godzilla Investment LLC v. Multnomah County Assessor*, TC-MD No 120199D, WL 3291789 at *4 (Aug 13, 2012). "An auction is defined as a 'sale of property to the highest bidder.' An auction eliminates the negotiation between the buyer and seller and requires buyers to negotiate with each other, generally leaving the seller out of the negotiation process." *Schnabel v. Clatsop County Assessor*, TC-MD No 100618D , WL 646678 at *2 (Feb 22, 2011) (citing *Webster's Third Int'l Dictionary* 142 (unabridged ed 2002)). Thus, an auction sale is not an "arm's-length transaction" under ORS 308.205 and is not necessarily reliable evidence of real market value.

Plaintiff also relied on sales of both unimproved and improved lots in or near Bend and Sisters. Sexton relied on his land sale studies and comparable land sales. The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as

---

[2] Plaintiff's employer purchased the subject property in an auction in October 2010 and, evidently, immediately sold the subject property to Plaintiff for the auction price. In effect, Plaintiff purchased the subject property through an auction.

though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D, WL 1068455 at [*]3 (Apr 3, 2007) (citations omitted). The "court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson*, TC-MD No 020869D at 5. OAR 150-308.205-(A)(2)(c) states:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."

Plaintiff identified two sales of improved properties in the Ranch and one bare land sale. Plaintiff did not make any adjustments for differences between those properties and the subject property. The two improved properties sold for $500,000 and $899,000. The parties dispute various aspects of those sales, including the percentage complete of the house that sold for $500,000 and whether the $899,000 sale included an obligation by the buyer to pay off liens. There is insufficient evidence for the court to resolve those questions or to make any finding as to the contributory value of the land in either of those sales. The bare land sale identified by Plaintiff involved a 0.61-acre lot that sold for $150,000. That property is much smaller than the subject property, which is 2.50 acres, and lacks the superior river, pasture, and mountain views of the subject property. Absent market adjustments or other similar evidence, it is difficult to determine the real market value of the subject property based on the 0.61-acre lot sale.

Plaintiff also provided a list of all bare land sales of 1.00 to 5.00 acres from July 1, 2010, through June 30, 2011. The 2011-12 roll real market value of the subject property, $310,000, falls within the range of those sale prices, albeit at the high end. However, it is not unreasonable that the 2011-12 real market value of the subject property would exceed the real market values of

many similar-sized lots in the area, given that the subject properly is superior with respect to its location, amenities, and views. Furthermore, properties with similar features as the subject property sold for $300,000 and $360,000 in late 2010 and early 2011. On the whole, Plaintiff's evidence does not support his requested real market value of $211,000.

Sexton formed his opinion of the 2011-12 real market value of the subject property based on his two land studies and his sales comparison approach. Sexton's two land studies, however interesting, are not helpful to the court insofar as they rely on sales from 2005 through 2008. Furthermore, the studies included no sales from 2009 and 2010 because, evidently, the only bare land sales in 2009 and 2010 involved non-typical market conditions. As this court has stated, "where the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.,* 10 OTR 146, 148 (1985). It is unfortunate that sales from 2010 were not considered because they may have provided "a more accurate reflection of the market" as of January 1, 2011.

Sexton relied on two sales of "small sites" in the Ranch in 2011. He did not make any quantitative adjustments to those sales, but noted that his study of "small sites" compared with "large sites" suggests that "positive adjustments" would be necessary. (Def's Ex B at 8.) Other than indicating that the 2011-12 real market value of the subject property exceeds $190,000, the court finds Sexton's sales comparison approach to be inconclusive.

There is no persuasive evidence that the 2011-12 real market value of the subject property, $310,000, is in error. Plaintiff's appeal must, therefore, be denied.

/ / /

/ / /

/ / /

### III. CONCLUSION

After careful consideration, the court finds that the 2011-12 real market value of the

subject property, $310,000, should be sustained. Plaintiff's appeal is denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of December 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on December 24, 2012. The Court filed and entered this document on December 24, 2012.*