IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MICHAEL CHEN,                          )
                                       )
            Plaintiff,                 )    TC-MD 120471D
                                       )
      v.                               )
                                       )
MULTNOMAH COUNTY ASSESSOR,             )
                                       )
            Defendant.                 )    **DECISION**

Plaintiff appeals the 2011-12 real market value of property identified as Account

R103905 (subject property).  A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on

January 8, 2013.  Plaintiff appeared on his own behalf.  Defendant did not appear.[1]

Plaintiff's Exhibits A through E were admitted.  Defendant's Exhibit A was not admitted

because Defendant was not present to offer it.

## I.  STATEMENT OF FACTS

Plaintiff testified that he purchased the subject property on December 30, 2011, paying

$75,000.  He stated that the subject property had "been on the market since 6/16/11 before being

sold" and he "accepted the seller's counter offer price of $75,000 after * * * [making an] initial

offer of $64,900."  (Ptf's Additional information at 1.)  Plaintiff testified that Bill Solvason

(Solvason), the seller's realtor, wrote that "he [Solvason] and the seller felt $75,000 was the real

market price reasonable (*sic*) be expected to be paid by an informed buyer at that time."  (*Id*.;

Ptf's Exs A, D.)  He testified that he and the seller "conducted the sale without compulsion.  This

was just merely another business transaction."  (*Id.* at 2; Ptf's Ex D.)  Plaintiff stated that "the

---

[1] Barry Dayton, Multnomah County Appraiser, telephoned the court, stating that Defendant mistakenly believed the trial was a telephone trial and asked if Defendant could be "patched" in to the courtroom.  Plaintiff objected, stating that he appeared in person and expected Defendant to appear.  The court did not grant Defendant's request.

seller purchased the home on 5/4/2011 for $83,250 (see the attached property records Exhibit E)
so the loss the seller had to incur was not substantial and they certainly were not compelled to
sell." (Ptf's Additional information at 2.) He stated:

> "The seller, US Bank, is a billion-dollar world-wide financial institution
> and they are in the business of 'lending' and sometimes 'taking back' their assets
> on some of defaults. US Bank was certainly not in distress when this transaction
> was conducted."

(*Id.*)

Plaintiff testified that his "independent appraiser" determined that the subject property's
real market value was $75,000. Plaintiff's appraiser did not testify and Plaintiff did not submit
the appraisal report as evidence even though he stated that the appraisal report was submitted
with his Complaint.

> In support of his requested real market value, Plaintiff stated:

> "I was also not willing to pay more than $75,000 because an almost exact
> home two doors down was sold for $76,000 on 9/21/2011. The address was 2340
> SE 130th, Portland, Oregon (See Exhibit B) I understand we are trying to
> establish the real market value for this property on 1/1/2011 but I have provided
> supporting documents why this property does not have a market value greater
> than $75,000 on 1/1/2011. According to the statistics given by the RMLS Market
> Action Report November Issue for year 2011 (See Exhibit C), page 2 area 143
> (SE Portland) shows a YTD depreciation of -9.9%. This means the price is about
> 10% higher at the beginning of year and no where near the value assessed by the
> Multnomah County. I truly believe the value of the home is $75,000 due to the
> conditions and repairs I had to make to bring the unit into a livable space. The
> price I paid reflected the repairs the seller chose not to make."

(*Id.*) Plaintiff testified that he made "repairs," spending "between $4,000 and $5,000" to replace
carpet, paint, new appliances, and plumbing.

## II. ANALYSIS

At issue in this case is the subject property's real market value for the 2011-12 tax year.

ORS 308.205(1)[2] defines real market value as:

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2009.

"[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007(2).

A. *Purchase Price*

When determining real market value, a voluntary, arm's-length sale of a property between a willing and knowledgeable buyer and seller is "very persuasive" of real market value. *Kem v. Dept. of Rev.* (*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). Plaintiff relies solely on his purchase price to determine the subject property's real market value. In considering a purchase price, the two important considerations are whether or not the sale was "recent" and whether it was "arm's-length." *Kem*, 267 Or at 114-15.

Plaintiff's purchase, which was recorded on December 30, 2011, was not close to the January 1, 2011, assessment date. Plaintiff's purchase of the subject property was not "recent."

The next question is whether the sale was an "arm's-length" transaction. At the time of Plaintiff's purchase, the subject property was a bank-owned property. This court has addressed the issue of bank-owned property previously, observing that:

> "A property purchased through foreclosure may well involve an element of compulsion on the part of the seller. There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor* (*Kryl*), TC-MD No 100192B, WL 1197444 at *2 (Mar 30, 2011).

In *Kryl*, this court gave little weight to a bank-owned property sale which occurred within a few months after the bank acquired it and after a short listing period. This court has also observed that, "a sale of bank-owned property conducted with such rapidity suggests duress or compulsion on the part of the seller, leading the court to conclude such sales as not indicative of an arm's-length transaction." *Brashnyk v. Lane County Assessor (Brashnyk)*, TC-MD 110308, WL 6182028 at *5 (Dec 12, 2011).

The Oregon Supreme Court, in *Ward v. Dept. of Revenue*, recognized that property purchased through foreclosure may be considered "a voluntary *bona fide* arm's-length transaction between a knowledgeable and willing buyer and a willing seller." 293 Or 506, 508, 650 P2d 923 (1982). This court has also held that "[t]here are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk*, WL 6182028 at *5. Such an exception may be recognized by the court "where the majority of sales are distress, [for] it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985). Bank-owned property sales may be considered as comparable sales for the purpose of establishing real market value "when those bank-owned property sales have been exposed to the open market and meet the nominal standards for an acceptable comparable sale." *Brashnyk*, WL 6182028 at *6 (internal quotation marks omitted).

Before Plaintiff purchased the subject property, the subject property was exposed to the market for more than six months. (Ptf's Additional information at 1.) Solvason wrote that that the subject property's "[I]nitial List Price was set by the Bank at $109,900 on 6/16/11. The price

/ / /

was adjusted during this time with the FINAL list Price being $79,900 on 9/28/11." (Ptf's Ex A.) The Bank did not accept Plaintiff's initial offer ($64,900[3]) and countered with a price substantially close to the sale price of a similar neighboring property that sold in September 2011, for $76,000. In a prior case, this court concluded that where the subject property and a comparable property were located on the same street in the same neighborhood and the time-trended sale prices were comparable, those sales were an accurate reflection of the market for that neighborhood. *Jennings Family Trust v. Lane County Assessor*, TC-MD 120129 (Oct 4, 2012.) In the case before the court, the subject property and the comparable property that sold in September 2011, are neighboring properties located on the same street and each property sold for substantially the same price after being exposed to the market for a substantial period of time.[4] The court concludes that the properties are comparable and Plaintiff's purchase price was the subject property's real market value as of Plaintiff's purchase date.

Because Plaintiff's purchase was not recent, Plaintiff's sale price must be time trended. Plaintiff offered evidence that for the first 11 months of 2011 "average sale prices" compared to the prior year declined 9.5 percent or 10.4 percent per year. (Ptf's Ex C at 2.) Using Plaintiff's evidence, Plaintiff's purchase price adjusted to the assessment date, January 1, 2011, is $83,000 (rounded).

Plaintiff testified that the trended purchase price should be reduced for repair costs he incurred. Plaintiff submitted no evidence of the actual cost of the items he listed as repairs. The court concludes that the seller adjusted Plaintiff's purchase price for the repairs (described by the seller's real estate agent as 'cosmetic,' stating that the "seller agreed to do some additional

---

[3] Solvason wrote that Plaintiff's initial offer made on October 8, 2011 was $60,000. (Ptf's Ex A.)

[4] The subject property was listed for sale for more than six months and the comparable property was listed for more than 10 months. (Ptf's Exs B, E.)

cosmetic repairs" prior to closing the transaction) made by Plaintiff when the seller accepted a sale price that was less than its final list price and less than the price paid for a similar property three months prior to Plaintiff's purchase date. (Ptf's Ex A.)

III. CONCLUSION

After careful review of Plaintiff's testimony and evidence, the court concludes that Plaintiff's purchase price was the subject property's real market value as of Plaintiff's date of purchase. Plaintiff's purchase price must be time-trended to the assessment date that was 12 months prior to Plaintiff's purchase date. Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2011-12 real market value of property identified as Account R103905 was $83,000.

Dated this ____ day of February 2013.

<br>

_____

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on February 20, 2013. The court filed and entered this Decision on February 20, 2013.*