IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| RANDY OLDENBURG | ) | |
| and DEENA OLDENBURG, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150145N |
| | ) | |
| v. | ) | |
| | ) | |
| WASCO COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered July 24, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal the real market value of property identified as Account 15228 (subject property) for the 2014-15 tax year. A trial was held in the Oregon Tax Courtroom on June 11, 2015, in Salem, Oregon. Plaintiffs appeared in person and Randy Oldenburg (Oldenburg) testified on behalf of Plaintiffs. Darlene Lufkin (Lufkin) appeared by telephone and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 22 were received without objection. Defendant's Exhibit A, pages 1 through 42, was received without objection.

I. STATEMENT OF FACTS

Lufkin testified that the subject property is a three-bedroom, two-bathroom residence located on 0.56 acres in Pine Hollow Lakeside Resort in Tygh Valley, Oregon. (*See* Def's Ex A at 27.) It was built in 2002, and includes 1,846 square feet of living space. (*See id.* at 2.) Oldenburg testified that the subject property is bordered by a restaurant and bar to the south, a campground to the east, and "manufactured homes and year round rentals" to the north. He testified that west of the subject property is an eight-foot dike that separates the subject property

from the lake. (*See id*.) The lake is surrounded by a strip of public access land. (*See id.* at 4.)

Oldenburg testified that properties on the other side of the lake do not have a dike between them and the lake. He testified that other lakefront property owners can view the lake from the first floor of their homes, whereas Plaintiffs can only view the lake from the second or third floors of the subject property.

A.      *Subject Property History; Condition*

Lufkin wrote in her appraisal report that the subject property was initially listed for sale in 2009 with price fluctuations since that time.[1] (Def's Ex A at 4.) On June 15, 2013, US Bank took title to the subject property after foreclosure. (*See id.*) Lufkin testified that Gorilla Capital purchased the subject property from US Bank at an auction for $147,000 on April 10, 2014. (*See id.*) Plaintiffs purchased the subject property for $170,000 from Gorilla Capital on June 25, 2014, after it had been listed for sale for 28 days. (*See id.*) Lufkin wrote that Gorilla Capital is "a real estate company [that] acquires distressed real estate." (*Id.*[2]) As a result, she considered the sale of the subject property "an investment purchase and sale which is not typical in this market." (*Id.*) Lufkin testified that Plaintiffs' purchase price was not an accurate reflection of typical market prices.

Oldenburg testified the subject property needed repairs and had water damage when Plaintiffs purchased it. Plaintiffs submitted photographs of the subject property's interior to demonstrate the condition issues. (Ptfs' Ex 14-15.) Lufkin testified that an interior inspection of the subject property "confirmed there were some issues with the home as purchased." She

---

[1] Plaintiffs submitted a printout from an unidentified source detailing the subject property's listing history since February 24, 2011. (Ptfs' Ex 2.)

[2] Lufkin provided a printout on Gorilla Capital stating that it "is a constantly evolving real estate company that buys, remodels, and sells roughly 400 homes a year nationwide across a wide spectrum of markets." (Def's Ex A at 20.) The description noted that Gorilla Capital places "an emphasis [on] acquiring distressed real estate." (*Id.*)

testified that she "observed poor finish work, as well as some floor covering removed." Lufkin wrote, however, that she was "hesitant to adjust for condition issues as a reduction in Real Market Value would need to be near $100,000 to have any influence on taxable value and property taxes * * *." (Def's Ex A at 5.) Oldenburg testified that that even if the subject property was in "perfect condition" he does not believe it "would not sell anywhere near $300,000."

B.      *Plaintiffs' Real Market Value Evidence*

Plaintiffs submitted evidence of one comparable land sale and property tax assessment information for two other properties. (Ptfs' Exs 17-21.) Oldenburg testified that the comparable sale was a "bare lot" located on the same side of the lake, two lots away from the subject property. He testified the comparable lot had been improved with a septic system and a small outbuilding. It sold for $87,500 in October of 2014. (*See* Ptfs' Ex 17.) Oldenburg testified that lakefront properties on the other side of the lake are not comparable to the subject property because they do not "sit behind" the dike and are not located near the campground. He testified that the subject property was unique due to its proximity to the campground, noting that the campground owner uses the property to burn debris and operate "4-wheelers." Oldenburg testified that "people * * * on the other side of the lake * * * don't deal with this."

C.      *Defendant's Real Market Value Evidence*

Lufkin wrote that she used a "market comparison approach," under which she submitted evidence of six comparable sales, all but one of which were waterfront properties. (Def's Ex A at 6.) Two of the properties were manufactured homes. (*See id.*) Lufkin testified that she adjusted the land values of her comparable sales for size and proximity to the lake based on a land value study conducted by Defendant. (*See id.* at 5.) She also adjusted for differences in

age, square footage, and quality. (*See id.* at 6.) Lufkin adjusted $3,000 per year for the differences between effective year built of the comparable properties and the subject property. (*See id.*) Her net adjustments were all upward, ranging from 21 to 86 percent of the unadjusted sale price. (*See id.*) Lufkin testified she was unable to find a sale that required a net downward adjustment to compare to the subject property. She testified that "this area does not have a lot of sales activity" and the "market sample lacked a home of similar age [to the subject property]."

Lufkin testified that sales 1 and 4 were the best comparable sales because they required the smallest net adjustments. (*See* Def's Ex A at 6.) Sales 1 and Sale 4 were both located on the opposite side of the lake from the subject property. (*See id.* at 7.) Sale 1 was a 1,788-square-foot house built in 1982 on a 0.31-acre lot that sold for $340,000 in October 2014. (*See id.* at 6.) Lufkin concluded an adjusted sale price of $410,915 for sale 1. (*See id.*) Sale 4 was a 1,704-square-foot house built in 1980 on a 0.45-acre lot that sold for $337,500 in May 2012. (*Id.*) Lufkin concluded an adjusted sale price of $424,738 for sale 4. (*See id.*) She concluded the subject property's 2014-15 real market value was $410,915. (*See id.* at 3, 6.)

D.      *Tax Roll Real Market Value and Requested Real Market Values*

The subject property's real market value was $421,160 and its maximum assessed value was $310,549 for the 2014-15 tax year. (*See* Ptfs' Compl at 2.) Plaintiffs requested a real market value for the subject property of $170,000 to reflect their 2014 purchase price. (*See id.* at 1.) Lufkin concluded that the subject property's 2014-15 real market value was $410,915, but testified that a reduction to that value would not result in tax savings. (*See* Def's Ex A at 3, 6.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2014-15 tax year. "Real market value is the standard used throughout the ad valorem statutes except for

special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD 020869D, WL 21263620 at \*2 (Mar 23, 2003). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[3]

The assessment date for the 2014-15 tax year was January 1, 2014. *See* ORS 308.007; 308.210.

The real market value of property must be determined in accordance with methods and procedures adopted by the Department of Revenue. *See* ORS 308.205(2). The value of property must be considered using the three value approaches: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *See* OAR 150-308.205(A)(2)(a). Although all three approaches may not be applicable in a given case, all three approaches must be considered. *See id.* Plaintiffs did not present evidence under any of the three approaches to value. Instead, they relied on their purchase of the subject property. Lufkin used the sales comparison approach.

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. *See* ORS 305.427. "[P]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiffs "must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D at 7 (Mar 13, 2012). If

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

Plaintiffs' "evidence is inconclusive or unpersuasive, [Plaintiffs] will have failed to meet [their] burden of proof * * *." *See Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Under ORS 305.412, this court "has jurisdiction to determine the real market value * * * on the basis of the evidence before the court without regard to the values pleaded by the parties."

A.      *Purchase Price as Evidence of Real Market Value*

Plaintiffs did not submit an appraisal, but, instead, relied on their purchase price to establish the subject property's real market value. The lack of appraisal is not fatal because "[t]he various approaches to valuation * * * are only vehicles used to determine the ultimate fact—market value." *Kem v. Dept. of Rev.* (*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973).

> "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value."

*Id*. "In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994).

Under *Kem*, a sale of the subject property must be recent. "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment." *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974). Plaintiffs purchased the subject property approximately seven months after the January 1, 2014, assessment date. No evidence was presented to indicate that market conditions had changed between January and June 2014. Moreover, Defendant utilized sales from September and October 2014 without making any time adjustments. The court finds that Plaintiffs' purchase of the subject property was recent.

The sale must also be an arm's-length transaction. Plaintiffs purchased the subject property from Gorilla Capital. No evidence was presented to suggest Plaintiffs were related to Gorilla Capital. The court finds the sale was an arm's-length transaction.

A recent, arm's-length transaction must also be voluntary to provide persuasive evidence of real market value. *Kem*, 267 Or at 114. "This court has been reluctant to consider 'foreclosure' sales" as persuasive evidence of real market value "because such sales 'may well involve an element of compulsion on the part of the seller.' " *Voronaeff v. Crook County Assessor*, TC-MD 110361C, WL 1426847 at *4 (Apr 25, 2012) (citations omitted); *see also* OAR 150-308.205-(A)(2)(c) ("[w]hen nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition.") "There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value." *Kryl v. Lane County Assessor,* TC-MD 100192B, WL 1197444 at *2 (Mar 30, 2011). "For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few more months to find a buyer willing to pay a higher price." *Id*.

The recent history of transactions involving the subject property indicates that the sale to Plaintiffs was influenced by atypical seller motivations. Plaintiffs purchased the subject property for $170,000 from Gorilla Capital on June 25, 2014, 28 days after the subject property was listed. Gorilla Capital, a company that purchases distressed properties, had previously purchased the subject property from US Bank for $147,000 at an auction on April 10, 2014. US Bank acquired

the subject property through foreclosure. A seller is typically motivated to sell a property for the best price possible. However, Gorilla Capital acquired the subject property for $147,000 and sold it for $170,000 after a listing period of 28 days. The court agrees with Lufkin's conclusion that Gorilla Capital's sale of the subject property was an investment sale atypical for the subject property's market.

"If a property has been marketed for a sufficiently long period of time and properly exposed to the market, the implication of distress on the part of the seller may be removed * * *." *Kumbalek v. Multnomah County Assessor,* TC-MD 130125D, WL 4764067 at *2 (Sept 5, 2013), citing *Ward v. Dept. of Revenue*, 293 Or 506, 508, 650 P2d 923 (1982). In this case, the subject property was listed on and off for several years prior to foreclosure in June 2013. Following foreclosure, the subject property was listed for approximately nine months before it sold at auction to Gorilla Capital, which sold it again after a 28-day listing period to Plaintiffs. No evidence was presented on the marketing efforts of either US Bank or Gorilla Capital. Plaintiffs did not make market-based adjustments to offset the atypical seller motivations, nor did they submit evidence that distressed sales were an accurate reflection of the subject property's market.[4] Due to the subject property's recent history of atypical market transactions, the court finds that Plaintiffs' purchase of the subject property is not persuasive evidence of its real market value absent additional supporting market evidence.

B.       *Sales Comparison Approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp. v. Lane County*

---

[4] "There are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk v. Lane County Assessor,* TC-MD 110308, WL 6182028 at *5 (Dec 12, 2011). For example, "where the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985).

*Assessor,* TC-MD 060354D, WL 1068455 at *3 (Apr 3, 2007). The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), which states that, "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used." "The court looks for arm's length transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson,* WL 21263620 at *3.

Plaintiffs submitted evidence of a sale of 0.31 acres of land for $87,500 in October 2014. Oldenburg testified that the land was located two lots away from the subject property and had been improved with a septic system and an outbuilding. Even if the court were to find that the land sale provided persuasive evidence of the subject property's land real market value, Plaintiffs presented no evidence of the subject property's improvement real market value, or of its total real market value. Plaintiffs' evidence under the sales comparison approach is incomplete.

Plaintiffs' additional evidence included property tax assessment information for two improved properties. That evidence is not relevant under the sales comparison approach. The court must determine the real market value using the approaches specified by the Department of Revenue. *See* ORS 308.205(2). Under the sales comparison approach, only *transactions* of property adjusted to be comparable to the subject property will be used to determine real market value. *See* OAR 150-308.205(A)(2)(c). Tax and assessment records are not transactions. Unfortunately, Plaintiffs have not provided any persuasive evidence to support the conclusion that their purchase price reflects the subject property's real market value as of January 1, 2014. Plaintiffs have failed to meet their burden of proof under ORS 305.427.

Although the burden has not shifted "the court has the jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to

the value pleaded by the parties." ORS 305.412. Lufkin submitted evidence of six sales of properties on or near the lake. She made large adjustments to the sales, primarily due to the age of the comparable properties relative to the subject property. Lufkin also made adjustments for differences in size, quality, and location relative to the lake. Lufkin provided evidence of Defendant's land study to support her land and location adjustments, but failed to present any evidence to support her adjustments for the age, size, and other features of the improvements. It is unclear how those adjustments were determined. All of Lufkin's net adjustments were upward, thus she failed to bracket the subject property.

Plaintiffs maintain that the subject property suffered from condition issues that impacted its real market value, but did not submit any cost to cure evidence. Lufkin agreed that the subject property was affected by condition issues as of the assessment date, but did not present any cost to cure evidence and did not make any condition adjustments in her sales comparison approach.

Ultimately, the court finds that Defendant's real market value evidence is inconclusive. The comparable sales presented did not bracket the subject property and all required significant adjustments, indicating that they may not be comparable to the subject property. Bracketing the subject property with comparable sales of properties with both higher and lower adjusted values would provide more persuasive evidence of the subject property's real market value. Even though the parties agreed the subject property suffered from condition issues as of January 1, 2014, Lufkin did not make any condition adjustments. The court cannot determine the subject property's 2014-15 real market value based on Defendant's evidence.

### III.  CONCLUSION

After careful consideration of the evidence, the court concludes that Plaintiffs failed to prove by a preponderance of the evidence that the subject property's 2014-15 real market value

was their purchase price of $170,000. The court further concludes that the remaining real market value evidence presented was inconclusive. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of August 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on August 10, 2015.*