IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CHRIS SHEPARD, )
)
     Plaintiff, ) TC-MD 170163R
v. )
)
CLATSOP COUNTY ASSESSOR, )
)
     Defendant. ) **FINAL DECISION**[1]

Plaintiff appeals a Board of Property Tax Appeals (BOPTA) Order, dated March 15, 2017, for the 2016-17 tax year. A telephone trial was held on November 6, 2017. Chris Shepard (Shepard) appeared and testified on his own behalf. Connie McCleary (McCleary) appeared and testified on behalf of Defendant. Plaintiff's Exhibit 1 was admitted into evidence without objection. Plaintiff's Exhibits 2 and 4 were not admitted into evidence because they were not timely served on Defendant, with the exception of page 7 of Exhibit 4, which was admitted as rebuttal evidence only.[2] Plaintiff's Exhibit 3 was admitted as rebuttal evidence only. Defendant's Exhibits A to C were admitted into evidence over Plaintiff's objection.

## I. STATEMENT OF FACTS

The subject property is a single-family home consisting of 4 bedrooms, 2 baths and a detached garage. The Property has 1,890 sq. ft. of living area on a 0.11 acre lot located one block from the beach in Seaside. BOPTA sustained Defendant's Real Market Value of $301,890 for the 2016-17 tax year.

---

[1] This Final Decision incorporates without change the court's Decision, entered February 23, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Tax Court Rules-Magistrate Division (TCR-MD) 12 C(1)(a) requires exhibits to be "postmarked at least 14 days before the trial date or physically received by the court and all other parties at least 10 days before the trial date." Subsection D of that rule provides "the court may exclude any evidence received after the time of exchange, sanction any party who withholds information, or use any other measure the court considers appropriate." Plaintiff does not dispute that his exhibits, other than Exhibit 1, were submitted late.

Shepard testified he is a certified real property manager and real estate agent focusing in the Portland metropolitan and tri-county area. He took a few classes on appraising but based his valuation of the property, included in his exhibits, on his years in the real estate industry.

Sometime in 2016, Shepard found an advertisement for the subject property, as a "for sale by owner," on the website Craigslist. Shepard testified that he contacted the owner and was told the property had been owned for some time, but they were not using it and wanted to sell it. Shepard talked with the owner about a house directly across the street that had just sold for $299,900. Shepard testified that the property across the street was smaller than the subject property, but it was in pristine condition with "gorgeous" landscaping and on a private lot. He testified that the purchasers of that house had been waiting for it to come on the market and that is why it sold for the full asking price and closed in only 48 days. (*See* Def's Ex A at 9.) Shepard testified that the seller of the subject property was very knowledgeable about property values in the area. Shepard was concerned about an easement on the subject property which was used by other houses and, intermittently, by trespassing pedestrians taking a shortcut to the beach. Shepard testified that for him, the easement was a determining factor on the price. Shepard and the owner agreed to a sales price of $255,000 and the sale closed on May 2, 2016. Shepard testified that he believes his purchase of the subject property represented an "arm's-length transaction" indicative of its real market value.

Shepard presented three properties as comparable sales for the subject property. Sale #1 was a 3 bedroom, 2 bath house sold on November 17, 2016, for $260,000. (Ptf's Ex 1 at 3, 5, 6.) Shepard testified that although the property was bank owned, he believes it represented the going market value because there were many bank owned properties being sold at that time. Shepard adjusted the sales price up by $10,000 for having one less bedroom and adjusted the price down

by $35,000 for having an attached garage, force air heating, 110 more square feet, and for being a one-level house. (*Id*. at 5.) Sale #2 was a 3 bedroom, 1.1 bath house sold on August 29, 2016, for $260,000. (*Id*. at 3, 5.) He testified the house is in a commercial area near the center of town. Shepard adjusted the sales price up by $14,000 based on the number of bedrooms and bathrooms, and down by $30,000 due to an attached garage, forced air heating, and because it was a single story and had more square footage. (*Id*. at 5.) Sale #3 was a 5 bedroom, 3 bath house which sold for $292,425 on October 27, 2015. (*Id*. at 3.) Shepard adjusted the sales price down by $45,000 due to the number of bedrooms, bathrooms, forced air heating, attached garage and more square footage. (*Id*. at 5.) Shepard acknowledged on cross examination that sale #3 was a bank owned property. Shepard testified that he did not adjust the above comparable sales for when they were sold to reflect their value as of January 1, 2016, but believed that market was appreciating during that year. He estimated that, based on these comparable sales, the value of the subject property would be $242,000.

Shepard testified that he listed the subject property for sale at $479,995, three months after he purchased it, just to test the market. He changed the price to $429,995 on September 28, 2016. (*See also* Def's Ex A at 10.) He testified that he only had a single visitor and that person told him the price was much too high.

McCleary is a senior appraiser for Defendant with 24 years of experience. She stated that Plaintiff's purchase of the subject property was not arm's-length because the property was not adequately marketed. She also testified that sales of bank owned properties were not the norm in Seaside in 2015 or 2016. She testified that Plaintiff's comparable #1 and #3 were not "good sales" because they were bank owned and comparable #2 was not comparable to the subject property because it was in a commercial area close to the heart of Seaside.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2016–17 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC–MD 020869D, WL 21263620 at *2 (Or Tax M Div Mar 26, 2003) (internal quotation marks omitted). Real market value is defined in ORS 308.205(1),[3] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor*, TC–MD 060354D, WL 1068455 at *3 (Or Tax M Div Apr 3, 2007) (internal quotation marks omitted). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson*, WL 21263620 at *3.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."

OAR 150–308–0240(2)(c).

Plaintiff bears the burden of proof and must establish his case by a preponderance of the

---

[3] References to the Oregon Revised Statutes (ORS) are to the 2015 version.

evidence. ORS 305.427. "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). The assessment date for the 2016–17 tax year is January 1, 2016. ORS 308.007; ORS 308.210.

A.      *Plaintiff's Purchase of the Subject Property*

Plaintiff primarily relies upon his May 2016 purchase price of $255,000 as conclusive evidence of the real market value of the subject property. "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted). "In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Bros. Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994) (citations omitted; brackets in original).

Under *Kem*, a sale of the subject property must be "recent." 267 Or at 114. Plaintiff purchased the subject property in May 2016, which is "recent" with respect to the January 1, 2016, assessment date. The sale must also be a "voluntary, arm's-length transaction." *Id*. Here, the voluntary nature of the sale is not disputed; however, Defendant asserts that the sale did not meet the "arm's-length transaction" requirement under ORS 308.205(1) and OAR 150-308-0240(2)(c). Defendant asserts that the subject property was only advertised on the website

Craigslist, which represented insufficient marketing of the property. Defendant also cites to Plaintiff's listing the subject property for sale several months after purchasing it at more than $200,000 above his purchase price.

There is no hard and fast rule on what constitutes adequate marketing for determining whether a particular property sale is an acceptable "arm's length transaction." *See e.g.*, *Ernst Bros.*, 320 Or at 300. The seller's apparent exclusive use of Craigslist as a marketing tool does not automatically or mechanically mean that the sale should be ignored. Rather, the court must look to the available facts and circumstances surrounding the sale. Here, Plaintiff was unable to provide any evidence as to how long the property was marketed or whether Craigslist and Zillow were the only means of marketing the property. The sale was not verified as required under OAR 150-308-0240(2)(c). Although Plaintiff's actions in putting the subject property up for immediate resale at $479,995 is not persuasive to the court that its real market was that high, it does undercut Plaintiff's assertion that his purchase price of $255,000 represented the real market value. Plaintiff's decision to exclude from his comparable sales a recent transaction, directly across the street from the subject property, concerns the court that Plaintiff was unduly cherry-picking his comparable sales. Plaintiff also argues that the easement on the subject property significantly impacted the sales price. But, he offered no evidence to guide the court on reaching a value to account for the easement. Ultimately, the court is not persuaded that Plaintiff's purchase of the subject property, standing alone, is sufficient evidence to prove its real market value.

/ / /

/ / /

/ / /

B.      *Plaintiff's Comparable Sales*

Two of three comparable sales offered by Plaintiff were bank owned properties. Generally, this court will not rely on bank owned sales absent adjustments made for unusual market conditions or persuasive evidence that a majority of the sales are distressed. *See Morrow County Grain Growers v. Dept. of Rev*., 10 OTR 146, 148 (1985)("[A]n isolated distress sale is not reliable * * * however, where the majority of the sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market.") Plaintiff's unsupported statement is the only evidence that the Seaside area was distressed in 2016. That statement, standing alone, is not persuasive to show that the two bank owned sales accurately reflected the market. Plaintiff offered no adjustments to account for the alleged distressed market conditions. The remaining comparable offered by Plaintiff (Sale #2) was a larger home in a commercial area. Plaintiff made no adjustments for location. That could be significant when comparing a house one block from the beach versus a busy area near downtown that is several blocks from the beach. Plaintiff also made no adjustments for timing of the sale, which was almost 9 months after the assessment date.

On the evidence presented, the court does not find Plaintiff's requested reduction in the 2016-17 real market value persuasive. Since Defendant presented evidence only in support of the value found by BOPTA, it is unnecessary to analyze their comparable sales.

## III.  CONCLUSION

After careful consideration, the court finds that Plaintiff failed to meet his burden of proof. The evidence presented by Plaintiff does not support his requested reduction in the 2016-17 real market value of the subject property. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of March, 2018.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on March 13, 2018.*