IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

XIAOHONG CAI,                           )
                                        )
            Plaintiff,                   )    TC-MD 130097N
                                        )
      v.                                )
                                        )
WASHINGTON COUNTY ASSESSOR,              )
                                        )
            Defendant.                   )    **FINAL DECISION**

The court entered its Decision in the above-entitled matter on November 14, 2013.  The

court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14

days after its Decision was entered.  The court's Final Decision incorporates its Decision without

change.

Plaintiff appeals the real market value of property identified as Account R2132673

(subject property) for the 2012-13 tax year.  A trial was held in the courtroom of the Oregon Tax

Court on September 23, 2013.  Plaintiff appeared and testified on his own behalf.  Adrienne

Wilkes, Appraisal Supervisor, appeared on behalf of Defendant.  Garrison Winkle-Bryan

(Winkle-Bryan), Registered Property Appraiser, testified on behalf of Defendant.  Plaintiff did

not submit any exhibits.  Defendant's Exhibits A and B were received without objection.

I.  STATEMENT OF FACTS

The subject property is a 2,484 square foot single-family, detached house built in 2005

and situated on a 0.08-acre lot in Beaverton.  (Def's Ex A at 5, 12.)  The subject property is

located in a newer 34-lot development built between 2005 and 2006 * * *."  (*Id.* at 5.)  It "faces a

small park and backs to the sports fields of Vose Elementary School."  (*Id.*)  Winkle-Bryan

/ / /

determined that "[t]he subject property is of average quality of construction with features typical of properties of this age and construction class * * *." (*Id.*)

Plaintiff testified that he purchased the subject property on January 27, 2012, for $247,000 "through a Coldwell Banker Seal buyer agent." (Ptf's Compl at 3.) He testified that the seller listed the subject property for $289,000 on September 24, 2011, and reduced the listing price to $275,000 on November 16, 2011. (*Id.*) Plaintiff testified that he made an offer of $240,000, which was rejected by the seller. (*Id.*) He testified that he increased his offer to $247,000 and "[t]he seller held [his] [$]247,000 offer for more than one month." (*Id.*) Plaintiff stated that, "[a]t the end of December, 2011, the seller finally accepted [his] offer and [they] closed the deal [in] January 2012." (*Id.*)

Plaintiff testified that he made an offer on the subject property based on the sale prices of other properties in the subject property's area. (Ptf's Compl at 3.) He testified that his purchase of the subject property was an arm's length transaction because "[t]he seller was an informed seller" and would have rejected Plaintiff's offer if it had received a higher offer. (*Id.*)

Winkle-Bryan testified that he talked to the subject property's selling agent and was told that the sale of the subject property was a short sale for cash. He testified that the subject property's previous owners were under distress; they were investors who lived in California and were not receiving sufficient cash flow from rental of the subject property. Winkle-Bryan testified that short sales involve third party lenders who must approve the sale. He testified that, during the 2012-13 tax year, distress sales were a "small" percentage of the sales in the subject property's neighborhood. (*See* Def's Ex B at 3 (summary of 2011 sales in the neighborhood).)

Winkle-Bryan testified that he used the cost approach and the sales comparison approach to determine the subject property's real market value as of January 1, 2012. (*See* Def's Ex A at

2.)  He testified that using Marshall and Swift building cost data, he determined an indicated value of $294,000 for the subject property under the cost approach.  (*Id.* at 18.)  Winkle-Bryan testified that he gave little weight to the cost approach.

For his sales comparison approach, Winkle-Bryan selected three properties similar to the subject property that sold between June 2011 and March 2012.  (Def's Ex A at 12.)  He made adjustments for time as well as for lot size, quality class, square feet, number of bathrooms, number of fireplaces, and heating and cooling.  (*Id.*)  Winkle-Bryan gave more weight to his first two sales.  (*Id.*)  He testified that his third sale was a "street of new beginnings" home with upgrades to the kitchen and master bedroom.  (*See id.* at 12, 16.)  Winkle-Bryan determined an indicated real market value of $275,000 under the sales comparison approach.  (*Id.* at 12.)

Plaintiff testified that in his view, Winkle-Bryan's appraisal of the subject property is less reliable than Plaintiff's purchase price because "the appraisal price is an average price of similar properties." (Ptf's Compl at 3.)

The subject property's 2012-13 tax roll real market value was $280,500 and its 2012-13 maximum assessed value was $281,470.  (Ptf's Compl at 2.)  Plaintiff requests that the 2012-13 real market value be reduced to $247,000 based on his purchase price.  Defendant requests that the 2012-13 real market value be reduced to $275,000 based on Winkle-Bryan's appraisal report.

## II.  ANALYSIS

The issue before the court is the real market value of the subject property for the 2012-13 tax year.  "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)).  Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1]

The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). There are three approaches of valuation that must be considered, although all three approaches may not be applicable: the cost approach, the sales comparison approach, and the income approach. OAR 150-308.205-(A)(2)(a); *Allen v. Dept of Rev.* (*Allen*), 17 OTR 248, 252 (2003). The real market value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). If the evidence is inconclusive or unpersuasive, Plaintiff will have failed to meet his burden of proof. *See Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff relies upon his January 2012 purchase price of $247,000. "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.* (*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted).

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2011.

"In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Brothers Corp. v. Dept. of Rev.* (*Ernst*), 320 Or 294, 300, 882 P2d 591 (1994) (citations omitted).

Under *Kem*, a sale of the subject property must be "recent." 267 Or at 114. Plaintiff purchased the subject property in January 2012, which is "recent" as of the January 1, 2012, assessment date. The sale must also be a "voluntary, arm's length transaction." *Id*. Here, there is a question whether Plaintiff's purchase was a "voluntary, arm's length transaction" because it was a short sale purchased through a Coldwell Banker agent. Winkle-Bryan testified that he contacted the subject property's selling agent and was told that the subject property's previous owners were under financial distress to sell the subject property.

Under certain circumstances, a distress sale may provide persuasive evidence of real market value. For instance, "where the majority of the sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985). Here, Plaintiff provided no evidence that the majority of sales in the subject property's market were distress sales. To the contrary, Winkle-Bryan provided a summary of 2011 sales from the subject property's neighborhood and found that distress sales were a relatively small percentage of all sales.

The court in *Ernst* stated that the court will consider whether the purchase price "was out of line with other market data * * *." 320 Or at 300. Plaintiff testified that he considered sales of properties in the subject property's area when he decided the amount to offer for the subject property. Unfortunately, Plaintiff did not provide any of the sales that he considered or other evidence indicating that his purchase price for the subject property was in line with market data.

The court finds that Plaintiff failed to meet his burden of proof that the subject property's real market value was $247,000 as of January 1, 2012.

Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Winkle-Bryan presented persuasive evidence under the sales comparison approach that the subject property's real market value was $275,000 as of January 1, 2012, and requests that the court reduce the 2012-13 real market value of the subject property to $275,000. The court accepts his value determination based on the evidence presented.

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to meet his burden of proof that the subject property's 2012-13 real market value was $247,000. Winkle-Bryan presented persuasive evidence that the subject property's 2012-13 real market value was $275,000 and the court accepts his determination. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account R2132673 was $275,000 for the 2012-13 tax year.

Dated this ___ day of December 2013.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on December 3, 2013. The court filed and entered this document on December 3, 2013.*